(June 12, 1915.)

## JOHN ANTLER, Appellant, v. M. M. COX et al., Respondents.

[149 Pac. 731.]

PERSONAL INJURIES—DAMAGES—SUFFICIENCY OF EVIDENCE—PROXIMATE CAUSE—NONSUIT.

1. Where it appears from the allegations of the complaint that the plaintiff relies upon the unsafe and unsuitable condition of the appliance or tools that he has to use in his work, in case of personal injury, in order to recover he must prove on the trial that such unsafe and unsuitable instrument was the proximate cause of his injury.

2. Where damages for personal injuries are claimed in an action which may have been occasioned by one of two causes, for one of which the defendants were responsible, and for the other they were not, the plaintiff must fail if his evidence does not show that the injuries were the result of the cause for which the defendants were responsible.

3. A proximate cause is that cause from which the effect might be expected to follow without the concurrence of any unusual circumstances.

4. *Held*, that the court did not err in granting a nonsuit.

APPEAL from the District Court of the Eighth Judicial District for Kootenai County. Hon. John M. Flynn, Judge.

Action to recover damages for personal injuries. Nonsuit granted and judgment of dismissal entered. *Affirmed.*

G. M. Ferris, E. J. Cannon and O. J. Bandelin, for Appellant.

Whether or not the jumping of the horse was the proximate cause, and whether or not appellant might have been injured had the respondents furnished proper appliances, were matters of fact to be submitted to the jury. (*Goe v. Northern Pac. R. Co.*, 30 Wash. 654, 71 Pac. 182; *Gray v. Washington W. P. Co.*, 27 Wash. 713, 68 Pac. 360; *Evansville*

*Hoop & Stave Co. v. Bailey,* 43 Ind. App. 153, 84 N. E. 549, 552.)

Appellant presented facts which entitle him to go to the jury, because it was the jumping of the horse which gave the respondents' negligence an opportunity to work the appellant harm. (*McDonald v. Toledo etc. Ry. Co.,* 74 Fed. 104, 20 C. C. A. 322; *Walrod v. Webster Co.,* 110 Iowa, 349, 81 N. W. 598, 47 L. R. A. 480; *McKean v. Chappell,* 56 Wash. 690, 106 Pac. 184; *Wible v. Burlington etc. Ry. Co.,* 109 Iowa, 557, 80 N. W. 679; *Olson v. Gill Home Inv. Co.,* 58 Wash. 151, 108 Pac. 140, 27 L. R. A., N. S., 884; *Wellington v. Pelletier,* 173 Fed. 908, 97 C. C. A. 458, 26 L. R. A., N. S., 719; *Strange v. Bodcaw L. Co.,* 79 Ark. 490, 116 Am. St. 92, 96 S. W. 152; *Bales v. McConnell,* 27 Okl. 407, 112 Pac. 978, 40 L. R. A., N. S., 940; 2 Labatt, Master & Servant, par. 813; *Grimes v. Louisville etc. Ry.,* 3 Ind. App. 573, 30 N. E. 200; *Baldridge etc. Bridge Co. v. Cartrett,* 75 Tex. 628, 13 S. W. 8; *Kennedy v. Mayor etc. of New York,* 73 N. Y. 365, 29 Am. Rep. 169; *Sturgis v. Kountz,* 165 Pa. St. 358, 30 Atl. 976, 27 L. R. A. 390.)

In order to hold the respondents liable in this case, it was only necessary to show that the appliance was of such a character that there was danger of some accident occurring by reason of its continued use. The following authorities support this contention: *Memphis Consol. Gas etc. Co. v. Creighton,* 183 Fed. 552, 106 C. C. A. 98; *Doyle v. Chicago etc. Ry. Co.,* 77 Iowa, 607, 42 N. W. 555, 4 L. R. A. 420; *Texas etc. Ry. v. Carlin,* 111 Fed. 777, 49 C. C. A. 605, 189 U. S. 354, 23 Sup. Ct. 585, 47 L. ed. 849.

The appliance which was furnished in the case at bar was not of such a character as could bring it within the "simple tool rule." Appliances much more simple in character have been decided by many courts not to be within the simple tool rule. (*Nicholds v. Crystal Plate Glass Co.* (Mo.), 27 S. W. 516; *Pennsylvania Ry. v. Forstall,* 159 Fed. 893, 87 C. C. A. 73; *Finnerty v. Burnham,* 205 Pa. St. 305, 54 Atl. 996; *Harris v. Kansas City etc. Ry.,* 146 Mo. 524, 124 S. W. 576; *Tibbs v. Deemer Mfg. Co.,* 182 Fed. 48, 104 C. C. A. 488;

*Mulligan v. Colorado Fuel etc. Co.,* 20 Colo. App. 198, 77 Pac. 977; *Neubauer v. Northern Pac. R. Co.,* 60 Minn. 130, 61 N. W. 912; *Twombly v. Consolidated Electric Light Co.,* 98 Me. 353, 57 Atl. 85, 64 L. R. A. 551; *Williams v. Garbutt Lumber Co.,* 132 Ga. 221, 64 S. E. 65; *Parker v. W. C. Wood Lumber Co.,* 98 Miss. 750, 54 So. 252, 40 L. R. A., N. S., 832.)

That rule has no application where the master has assured the servant that the appliance was safe. (*Burkard v. Leschen etc. Rope Co.,* 217 Mo. 466, 117 S. W. 35, 40; *Christiansen v. McLellan,* 74 Wash. 318, 321, 133 Pac. 434; *Anustasakas v. International Contract Co.,* 57 Wash. 453, 107 Pac. 342; *Hilgar v. Walla Walla,* 50 Wash. 470, 97 Pac. 498, 19 L. R. A., N. S., 367.)

Black & Wernette and Post, Avery & Higgins, for Respondents.

A verdict must be based on facts, not on conjecture. The court has no right to permit the jury to guess or speculate as to the cause of an accident in an action for personal injuries. (*Whitehouse v. Bryant Lumber etc. Co.,* 50 Wash. 563, 97 Pac. 751; *Olmstead v. Hastings Shingle Mfg. Co.,* 48 Wash. 657, 94 Pac. 474; *Knapp v. Northern Pacific R. Co.,* 56 Wash. 662, 106 Pac. 190; *Peterson v. Union Iron Works,* 48 Wash. 505, 93 Pac. 1077; *Weckter v. Great Northern R. Co.,* 54 Wash. 203, 102 Pac. 1053; *Lewinn v. Murphy,* 63 Wash. 356, Ann. Cas. 1912D, 433, 115 Pac. 740; *Pearson v. Northern Pac. R. Co.,* 72 Wash. 8, 129 Pac. 573; *Searles v. Manhattan Ry. Co.,* 101 N. Y. 661, 5 N. E. 66; *Patton v. Texas & Pac. R. Co.,* 179 U. S. 658, 21 Sup. Ct. 275, 45 L. ed. 361; *Taylor v. City of Yonkers,* 105 N. Y. 202, 59 Am. Rep. 492, 11 N. E. 642; *Grant v. Pennsylvania & N. Y. Canal & R. Co.,* 133 N. Y. 657, 31 N. E. 220.)

"Proximate cause is such cause as would probably lead to injury and which has been shown to have led to it. There must be nothing to break the causal connection between the alleged negligence and the injuries." (*Brown v. Oregon-Washington R. & N. Co.,* 63 Or. 396, 403, 128 Pac. 38, 40; *Washington v. Baltimore etc. R. Co.,* 17 W. Va. 190; *Clay-*

*pool v. Wigmore,* 34 Ind. App. 35, 40, 71 N. E. 510; *Stone v. Boston & A. R. Co.,* 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794; *Behling v. Southwest Pennsylvania Pipe-lines,* 160 Pa. St. 359, 40 Am. St. 724, 28 Atl. 777; *Cole v. German Savings & L. Society,* 124 Fed. 113, 115, 59 C. C. A. 593, 63 L. R. A. 416; *Braun v. Craven,* 175 Ill. 401, 405, 51 N. E. 657, 659, 42 L. R. A. 199; *Cleveland C. C. & St. L. Ry. Co. v. Lindsay,* 109 Ill. App. 533; *Milwaukee etc. Ry. Co. v. Kellogg,* 94 U. S. 469, 475, 24 L. ed. 256; 1 Thompson's Commentaries on Negligence, 57; 29 Cyc. 528; *Hartvig v. N. P. Lumber Co.,* 19 Or. 522, 525, 25 Pac. 358.)

There is no evidence of a hidden defect, or a condition not known by plaintiff. (*Goure v. Storey,* 17 Ida. 352, 361, 105 Pac. 794.)

Where the method is understood, it is immaterial whether it is the usual or ordinary method. (*Smith v. Potlatch Lumber Co.,* 22 Ida. 782, 128 Pac. 546; *Drake v. Union Pac. Ry. Co.,* 2 Ida. (453) 487, 21 Pac. 560; *Day v. Cleveland etc. R. Co.,* 137 Ind. 206, 36 N. E. 854.)

The rule which governs the use of simple tools furnished by the master needs no extended discussion. (*Lapier v. Beaubien Ice & Coal Co.,* 162 Mich. 533, 127 N. W. 692, 35 L. R. A., N. S., 199; *Stirling Coal & Coke Co. v. Fork,* 141 Ky. 40, 131 S. W. 1030; *Hogg v. Standard Lumber Co.,* 52 Wash. 8, 100 Pac. 151; *Cahill v. Hilton,* 106 N. Y. 512, 13 N. E. 339; *Meador v. Lake Shore & M. S. Ry. Co.,* 138 Ind. 290, 46 Am. St. 384, 37 N. E. 721; *Wheaton v. Wagner Lake Ice etc. Co.,* 151 Mich. 100, 114 N. W. 853; *House v. Southern R. Co.,* 152 N. C. 397, 67 S. E. 981.)

SULLIVAN, C. J.—This action was brought to recover damages for personal injuries received while in the employ of the respondents, which resulted in the loss of a leg.

It is alleged that the appliances furnished to appellant were unsafe and dangerous. On the trial appellant introduced his evidence and rested and counsel thereupon made a motion for a nonsuit, which the court sustained and entered a judgment dismissing the action. Thereafter a motion for a

new trial was denied.  The appeal is from the judgment and the order denying the new trial.

Appellant assigns as error the granting of respondents' motion for a nonsuit, denial of appellant's motion for a new trial, and that the court erred in entering judgment in favor of the respondents.

The following facts appear from the record: Appellant is 38 years of age, of German descent and does not speak the English language very well; has been in this country about eight years and has been employed most of the time as a carpenter, and had not had much experience in working in the woods or in handling horses until employed by respondents, where he had worked only a short time before the accident occurred.

The respondents were engaged in logging and maintaining and operating logging camps for the purpose of carrying on their business.  Among other things, they were engaged in trailing logs down a chute.  Two days prior to the accident, respondents requested appellant to take a horse and trail logs.  The appellant objected to doing that kind of work and informed respondents that he knew nothing whatever about handling horses or of that kind of work, but consented to do the work.

The work of trailing logs is performed by the use of a horse and chain some 20 to 24 feet in length, attached to a single-tree by means of a hook.  On the end of this chain is attached a trail-hook.  A number of logs are placed in the chute, one after another, and the trail-hook is fastened to the upper end of the upper log, and the horse is then driven along the chute, dragging or pushing the logs down the chute to the desired point.  The chain in this instance was composed of about ten feet of link chain and about ten feet of wire cable and the hook was not fastened to the chain by a swivel.  After the logs had been delivered to the desired point, appellant would remove the hook from the log, turn the horse around and then put the trail-hook in the ring on the singletree and the horse would then be driven back to the point of the chute where the next load of logs was to be taken

from. This operation was repeated several times an hour. The horse was well broken in this kind of work and was handled without lines; that is, the lines were not taken down from the hames. It appears that the trail-hook was attached to the wire cable without a swivel and at times became unhooked, or the hook would come out of the ring on the single-tree as the horse dragged it back for another load. Appellant was instructed by respondents to use this appliance and was assured by them that it was safe.

While the appellant was using this appliance as above stated and at the time of the accident, it appears that he had just trailed some logs and was returning for another load; that he had turned the horse around and hooked the hook in the ring of the singletree and had started the horse back in the proper direction, when for some reason the horse after going a short distance turned from the path along the chute and appellant went in front of him in order to turn him around and keep him in the proper direction. He held up his hands and called to the horse to stop. The horse at that suddenly jumped past the appellant, dragging the chain after him. The hook came out of the ring in the singletree and the chain and cable were thrown around a tree and caught appellant's leg back of the knee and he was thus dragged some hundred feet or more before the horse could be stopped. Appellant's leg was badly lacerated and torn by the hook. Thereupon appellant was taken to the camp and a doctor was procured in about twenty-six hours, who stitched up and cleaned the wounds. Gangrene set in about the fourth day and the leg was thereafter amputated above the knee.

Certain expert witnesses testified that the appliance or chain furnished to the appellant was not like the one which is generally used or which is ordinarily or customarily used for such work; that the proper appliance is a chain and a swivel. It is claimed by counsel for appellant that the theory upon which the court sustained the motion for a nonsuit was that the jumping of the horse or the running away of the horse was the proximate cause of the accident, for which the respondents were in no wise responsible, and that appellant

might have been injured had the respondents furnished a chain and swivel instead of the chain and cable used, and counsel contend under the authorities that whether or not the jumping of the horse was the proximate cause of the accident, and whether or not appellant might have been injured had respondents furnished the alleged proper appliances, were matters of fact to be submitted to the jury.

In the judgment of nonsuit the court stated as follows:

"The defendant moved the court that this action be withdrawn from the jury and a judgment of nonsuit be entered herein for the reason that the evidence introduced by plaintiff and the proof made by him in this case was not sufficient to warrant submitting the cause to the jury for its decision," and sustained the motion and entered judgment dismissing the action.

The reason, as stated in paragraph 7 of the complaint, why the defendants were chargeable with this accident, is as follows: "That said appliances were unsafe and dangerous for the reason that the cable to which the trail-hook was fastened was stiff and unwieldy, thereby causing said cable to twist and curl as it was dragged along the ground by the horse, and causing the trail-hook to fly around in a dangerous manner, whereas, had defendants furnished the proper, suitable and reasonably safe appliances as heretofore described, said trail-hook would have remained upon the ground as it was dragged along."

The conditions there alleged were not proven on the trial. Instead of proving that this hook dragged on the ground at the end of a cable, and because of the twisting and curling of the cable it would fly around and become dangerous, the appellant testified that its normal condition when not attached to a log was to be hooked in the singletree and dragged on the ground and that it would become unhooked, a condition contrary or opposed to said allegations of the complaint.

In the ninth paragraph of the complaint, it is alleged that "the wire cable to which the trail-hook was fastened, because of being an improper and unsuitable appliance, and not rea-

sonably safe as hereinbefore alleged, curled and twisted about in such a manner that the trail-hook struck and caught plaintiff,'' etc. We find nothing in the testimony offered that would authorize the jury to attribute said accident to the curling or twisting of the cable.

It appears from the allegations of the complaint that the plaintiff relied upon the unsafe and unsuitable condition of the cable, and because of its being an improper and unsuitable appliance it was responsible for the accident; but the evidence introduced does not establish the fact that the cable was responsible for the accident.

Counsel for appellant contend that the proximate cause of the injury was the negligence of the defendants in furnishing said chain and cable for the use of appellant. As will be noted from the above quotation from the court's decision, the court granted a judgment of nonsuit ''for the reason that the evidence introduced by the plaintiff and the proof made by him in this case was not sufficient to warrant submitting the case to the jury for its decision.'' The court was justified in finding that there was not sufficient evidence to establish the principal allegations of the complaint, and hence declined to submit the case to the jury. It may have been that the main reason the court granted the nonsuit was that he concluded that the evidence was not sufficient to charge the respondents with the proximate cause of the injury sustained by the plaintiff, and if that be true the court did not err in so concluding.

We find no testimony in the record which shows that the hook would come out of the ring in the singletree because the ''wire cable was stiff and attached to the trail-hook without a swivel.'' Appellant testified that the hook came out frequently—several times a day—because in dragging it behind the horse it would catch on rough places and become unhooked. The evidence shows that the horse in going back up the chute turned around or left the trail, for some reason not shown by the evidence, and appellant tried to go around him and get to his head, but the horse turned about very quickly and made for the back path which went between the chute

and a tree.   Appellant tried to get there first and head the horse off, but did not do so, but stopped at the tree because both could not go past at the same time.   Appellant was waving his hands and calling to the horse to stop, which the horse refused to do, and after it passed the tree the chain swung around and appellant was struck by the hook.   Appellant testified that he did not know when or how the hook became detached from the ring in the singletree, and it may have been because the singletree hit the tree or because of the sudden turn of the horse, either of which would possibly dislodge the hook.   No negligence is charged because of the size, form or position of the hook or the ring in which it was fastened.   From the evidence it was impossible for the jury to say that the cable caused the hook to come out of the ring, and it would be a pure guess as to whether or not the cable caused the hook to come out of the ring, and the jury, if the case had been submitted to them, would be left to speculate as to the cause of the hook's coming out of the ring.

The runaway horse brought about conditions not contemplated by anyone.   In his testimony appellant admitted that the horse was a good horse and well trained and knew his business, and that he had never acted that way before.   It appears that suddenly, without warning, the horse, either through fright or some other cause, started to run away, and while appellant was trying to stop him, the accident occurred.   The evidence does not show that because of the twisting of the cable the hook became detached from the singletree, and the jury, if it had entered a verdict against the defendants, would have had to guess what caused the hook to become detached from the singletree.   One witness testified that the horse was on the gallop as he came down the path.

In an action for personal injury, a court ought not to permit a jury to guess or speculate as to the cause of an accident causing such injuries.   As bearing upon this question, see *Whitehouse v. Bryant Lumber & S. Co.*, 50 Wash. 563, 97 Pac. 751; *Olmstead v. Hastings Shingle Mfg. Co.*, 48 Wash. 657, 94 Pac. 474.

In *Searles v. Manhattan Ry. Co.*, 101 N. Y. 661, 5 N. E. 66, the question was whether or not the cinder that fell in plaintiff's eye came from a smokestack or whether it came from the ash-pan of an engine because the ash-pan was out of repair. The court said:

"When the fact is that the damages claimed in an action were occasioned by one of two causes, for one of which the defendant is responsible, and for the other of which it is not responsible, the plaintiff must fail if his evidence does not show that the damages were produced by the former cause, and he must fail, also, if it is just as probable that they were caused by the one as by the other, as the plaintiff is bound to make out his case by the preponderance of evidence. The jury must not be left to mere conjecture; and a bare possibility that the damages were caused in consequence of the negligence and unskillfulness of the defendant is not sufficient." (See, also, *Taylor v. City of Yonkers*, 105 N. Y. 202, 59 Am. Rep. 492, 11 N. E. 642.)

Under the facts as shown by the evidence, it cannot be said as a matter of law, or at all, that the appellant would or would not have been injured if a chain had been used instead of a part chain and part cable, or that he was or was not injured because of the chain being part cable, because there is no evidence whatever to give the court or jury any information as to why this hook hit the appellant except that it was being dragged or carried behind a runaway horse, and the trial court held that as a matter of law there was no evidence from which a reasonable mind could find that the cable was the proximate cause of the accident.

The appellant contends that if respondents had furnished a chain, the chain would have followed the horse in his runaway, and for that reason there would have been no injury; but this is a mere conjecture, since if the horse turned suddenly, as it appears he did in this case, with a long chain dragging behind him, it certainly would not have followed in a direct line with the horse. This contention is an effort to assume facts which do not appear in the case.

The accident certainly would not have happened had the horse not run away and had the work progressed in the usual way; nor can it be said that the accident might reasonably have been expected to happen, since the horse which caused the accident was correctly trained, gentle and used to the work.

In *Brown v. Oregon-Washington R. & N. Co.*, 63 Or. 396, 403, 128 Pac. 38, in referring to the question of proximate cause in personal injury cases, the court said:

"The law regards the one as the proximate cause of the other, without regard to the lapse of time where no other cause intervenes or comes between the negligence charged and the injuries received to contribute to it. There must be nothing to break the causal connection between the alleged negligence and the injuries."

In *Cole v. German Savings & L. Society*, 124 Fed. 113, 59 C. C. A. 593, 63 L. R. A. 416, the court said:

"An injury that results from an act of negligence, but that could not have been foreseen or reasonably anticipated as its probable consequence, and that would not have resulted from it, had not the interposition of some new and independent cause interrupted the natural sequence of events, turned aside their course, and produced it, is not actionable. Such an act of negligence is the remote, and the independent intervening cause is the proximate, cause of the injury. A natural consequence of an act is the consequence which ordinarily follows it—the result which may be reasonably anticipated from it. A probable consequence is one that is more likely to follow its supposed cause than it is to fail to follow it."

A proximate cause is one from which the effect might be expected to follow without the concurrence of any unusual circumstances. (32 Cyc. 745.)

The rule is thoroughly established by the authorities that proximate causes are such as are the ordinary and natural results of the omission or negligence complained of, and are usual and might have been reasonably expected to occur.

The tool or appliance that caused the injury was a very simple one, and the plaintiff had actually worked with it for several days and made trips every ten or fifteen minutes with

it.   He testified that the hook came out many times every day and that he put it back.   There is no evidence to show that it was dangerous when used in the manner contemplated, and when the horse was not running away.   There had been no trouble in connection with the hook except that it would come unhooked from the singletree when the horse was dragging it back over rough ground.   If the horse had not been running away, the hook would not have been flying in the air.   There is no evidence that there was any hidden defect in it.

As bearing upon the questions here involved, see *Drake v. Union Pac. Ry. Co.*, 2 Idaho (453), 487, 21 Pac. 560; *Harvey v. Alturas Coal Min. Co.*, 3 Ida. 510, 31 Pac. 819; *Goure v. Storey*, 17 Ida. 352, 363, 105 Pac. 794; *Day v. Cleveland etc. R. Co.*, 137 Ind. 206, 36 N. E. 854.

The court did not err in sustaining said motion for a non-suit.

Finding no reversible error in the record, the judgment of the trial court must be affirmed, and it is so ordered, with costs in favor of the respondents.

Budge and Morgan, JJ., concur.