514 P.2d 811

**Lyla PERKINS, Plaintiff and Appellant,**

v.

**FIT–WELL ARTIFICIAL LIMB CO. et al.,
Defendants and Respondents.**

**No. 13089.**

Supreme Court of Utah.

Oct. 4, 1973.

E. Earl Greenwood, Jr., Anthony M. Thurber, Salt Lake City, for plaintiff and appellant.

H. Wayne Wadsworth, Salt Lake City, for Fit-Well Artificial Limb.

Ray R. Christensen, Salt Lake City, for New York Wire Co.

ELLETT, Justice:

The plaintiff, appellant herein, appeals from a judgment based on an adverse jury verdict.

The assignments of error may be grouped under two headings, viz.:

1. The refusal of the trial court to submit the case to the jury under a theory of strict liability in tort, and

2. The curtailment of the examination of plaintiff's expert witness.

The plaintiff, a victim of polio, requires crutches to assist her in walking. She fell and received grievous injuries when a crutch manufactured by the predecessor of New York Wire Company broke as she was descending some steps. She based her claim against the manufacturer on negligence in the design of the crutch and on a claim of defective weakness in the shaft of the crutch. She sued the partnership, claiming that the partners or their employees sold her the defective crutch and not only negligently failed to warn her of the defective condition but instead advised and assured her that the crutch was in a safe and proper condition for use.

At the beginning of the trial the court ruled that strict liability in tort for defective products was not permitted in Utah, and the appellant claims this was an erroneous statement of the law.

This court has not had an occasion to decide that question heretofore, and we

need not now decide it because we do not believe the facts of the case would warrant the application of that doctrine even if we should hold that it was applicable in a proper case.

There is no question but that the crutch broke because of the wearing of a loose sleeve by which the handle was affixed to the shaft of the crutch. While the plaintiff denies there was ever a change made in the pin through the sleeve, it can hardly be doubted that the original aluminum pin had been replaced by one of steel and that the steel pin caused a greater amount of wear on the shaft than the original pin would have caused.

■ The crutch was used for some five years after purchase and after the plaintiff knew the handle was loose. When the user of a defective product knows, or in the exercise of ordinary care should know, of the defect in a product and of the danger inherent therein, the doctrine of strict liability in tort should not apply to harm occurring to the purchaser after such knowledge. Codling v. Paglia, 32 N.Y.2d 330, 345 N.Y.S.2d 461, 298 N.E.2d 622 (1973). However, it cannot be said as a matter of law that plaintiff assumed the risk before the crutch broke or that she was guilty of contributory negligence because she claims that on two occasions she took it to the Fit-Well Artificial Limb Company's office to inquire about the loose handle and that upon each occasion she

was assured that it was safe and proper to use.

■■ As to her claim of curtailment of examination of her expert witness, we see no error. The trial judge is allowed a wide discretion in his control over the examination of witnesses—lay and expert alike. Unless he abuses that discretion and prevents the witness from answering a proper question on a material matter, he should not be reversed.

■ One of the matters which counsel for plaintiff attempted to elicit from an expert witness pertained to the hardness of the shaft of the crutch and how much harder and more resistant to wear it would have been if another alloy had been used.

There was no claim of negligence in the pleadings based on a lack of hardness in the crutch. The claim was that there existed a weak spot in the shaft of the crutch and that the collar of the handle on the shaft was so placed as to conceal the weak and defective condition thereof.

In sustaining an objection to the proffered testimony, the trial judge stated:

I would still sustain the objection of the proffer. It is my opinion that the testimony as summarized by Mr. Thurber, if given by the Doctor, would be immaterial and irrelevant and improper testimony here. The fact that a manufacturer may have put something into a product that would have made it a hard-

er product from a metal point of view, I don't think is evidence of negligence. I don't think the fact that they may have hardened it without additional substantial cost is a relevant matter. It may well be that, as I indicated to you, in any event, this is the only crutch in one million or ten million that may have broken like this. What you are concerned with is what made it break, and I don't think the offered testimony is admissible on that point.

We do not think there was any error in excluding the testimony.

The other line of questioning to which the court sustained an objection pertained to a hypothetical question the last sentence of which read:

Now, making those assumptions, Doctor, I am going to ask you whether you have an opinion, based upon your familiarity with the field of design engineering and upon those assumptions whether you have an opinion whether the manufacture and placing into the stream of commerce of the crutches in the condition which had been—which has been described, represented from an engineering standpoint the exercise of ordinary care?

The court stated:

You are asking him to decide the jury question, their burden. His expertise goes to what caused the crutch to fail.

It is for the jury to decide whether or not anyone was negligent here, not for this doctor.

In view of the pleadings, we are unable to say that the court erred in limiting the testimony of the expert witness as he did.

We find no prejudicial error in the record and, therefore, affirm the judgment. No costs are awarded.

CALLISTER, C. J., and CROCKETT, HENRIOD and TUCKETT, JJ., concur.